**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

CRISTOPHER O'NEAL BURKS

        Petitioner,

vs.                              Case No.      3:12-cv-913-J-34JBT
                                                            3:10-cr-74-J-34JBT

UNITED STATES OF AMERICA,

        Respondent.

## <u>ORDER</u>

This case is before the Court on Petitioner Cristopher O'Neal Burks' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1, Motion to Vacate)[1], filed on August 7, 2012. The United States filed a Motion to Dismiss on January 10, 2014. (Doc. 6, Motion to Dismiss). Burks filed a Response to the Government's Motion to Dismiss on March 24, 2014. (Doc. 9, Response).

Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and determines that an evidentiary hearing is not necessary to resolve the merits of this action.

---

[1] Citations to Burks' criminal case file, <u>United States of America v. Cristopher O'Neal Burks</u>, 3:10-cr-74-J-34JBT, are denoted as "Crim. Doc. ___." Citations to Burks' civil § 2255 case file, 3:12-cv-913-J-34JBT, are denoted as "Doc. ___."

[2] Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before deciding on a § 2255 motion.

See Aron v. United States, 291 F.3d 708, 714–15 (11th Cir. 2002) (an evidentiary hearing on a § 2255 petition is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (concluding that a petitioner's ineffective assistance claim may be dismissed without an evidentiary hearing when the petitioner alleges facts that, even if true, would not entitle him to relief); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) ("On habeas a federal district court need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel."); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[3]

For the reasons set forth below, Burks' Motion to Vacate, Correct, or Set Aside his sentence is due to be dismissed as untimely.

## I.   Background

On March 17, 2010, a grand jury sitting in the Middle District of Florida indicted Burks on one count of receiving child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1) (Count One), and one count of possessing child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) (Count Two).  (Crim. Doc. 1, Indictment).  On June 23, 2010, Burks pled guilty to Count One of the Indictment pursuant to a written plea

---

[3] Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point.  Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007.  Fed. R. App. P. 32.1(a).

agreement.  (Crim. Doc. 28, Plea Agreement).  In exchange for his guilty plea, the United States agreed to dismiss the charge in Count Two.  See id. at 2.  As part of the Plea Agreement, Burks affirmed that he voluntarily pled guilty free from coercion and without reliance on any promises or benefits of any kind other than those set forth in the Plea Agreement.  Id. at 9.  The first page of the Plea Agreement advised Burks that the offense charged in Count One of the Indictment was punishable by a minimum mandatory term of imprisonment of five years and up to a maximum of 20 years, as well as a term of supervised release of at least five years and up to life.  Id. at 1.  The Plea Agreement also stated that it did not bind the Court, and that the Court alone would determine Burks' sentence.  Id. at 7.  As part of the Plea Agreement, Burks waived the right to directly appeal or collaterally attack his sentence, unless (1) the sentence exceeded the applicable United States Sentencing Guidelines ("Guidelines") range as determined by the Court, (2) the sentence exceeded the statutory maximum, (3) the sentence violated the Eighth Amendment to the Constitution, or (4) the government appealed first.  Id. at 8.

On October 25, 2010, the Court sentenced Burks to a term of 15 years in prison, followed by a lifetime term of supervised release.  (Crim. Doc. 36, Judgment at 2-3).  The record reflects that Burks did not file a notice of appeal.  Therefore, his conviction and sentence became final on November 8, 2010, upon the expiration of the 14-day period for filing a notice of appeal under Fed. R. App. P. 4(b)(1)(A).  Adams v. United States, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999).  Burks had one year from that date, or until November 8, 2011, to timely file a motion to vacate under 28 U.S.C. § 2255(f)(1).  Burks

filed his Motion to Vacate on August 7, 2012, and the Motion to Vacate is therefore untimely under §2255(f)(1). Nevertheless, Burks contends that his Motion to Vacate is timely under § 2255(f)(4) as being filed within one year of the date on which he learned of facts supporting his claim that were not previously discoverable through due diligence. Motion to Vacate at 15-16. Burks also claims that he is entitled to rely on equitable tolling. Id. at 16.

## II.   Burks' Motion to Vacate

Burks raises two claims of ineffective assistance of counsel in his Motion to Vacate. First, Burks claims that his attorney "coerced" or induced him to plead guilty by assuring him he would receive only a five year prison sentence if he pled guilty. Id. at 5-7. Specifically, Burks alleges that counsel told him: "Plead guilty, the most you will get is 5 years, I worked it out with the government off the record and if you don't plead guilty, your [sic] going to get 30 years or more." Id. at 5. Burks states that he pled guilty in reliance on his attorney's assurance of this "off the record" agreement with the government. However, Burks also admits that he told the Court during the plea colloquy that he was not pleading guilty in reliance on any promises or understandings outside those contained in the Plea Agreement. Id. at 6; see also Plea Tr. at 28-29. The remedy Burks seeks under this claim is vacatur of his guilty plea and conviction.

Second, Burks claims that "after the sentencing hearing, [he] told his attorney that he wanted to appeal his sentence." Motion to Vacate at 9. Because his attorney never filed the allegedly requested appeal, Burks contends that counsel rendered ineffective

assistance in dereliction of the professional standards for criminal defense attorneys set forth under Roe v. Flores-Ortega, 528 U.S. 470 (2000), and Gomez-Diaz v. United States, 433 F.3d 788 (11th Cir. 2005).  The remedy Burks seeks is vacatur and re-imposition of his sentence in order to allow an out-of-time appeal.  Motion to Vacate at 9.  In an attempt to bring the claim within § 2255's statute of limitations, Burks further contends that this claim is timely under § 2255(f)(4), which allows for the filing of a motion to vacate within one year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2255(f)(4).  In support of that argument, Burks claims that he did not discover that his attorney did not file an appeal until sometime after February 2012, when his sister finally called the Eleventh Circuit Court of Appeals to learn about the status of any filings in his case. Motion to Vacate at 16.  Burks contends that he exercised due diligence by writing his attorney about eight months after sentencing to inquire about an appeal, by having his sister attempt to contact his attorney between August 2011 and February 2012, and finally by having his sister call the Eleventh Circuit.  Burks thus contends that the fact that his attorney did not file the requested appeal was not discoverable through the exercise of due diligence until his sister called the Eleventh Circuit sometime after February 2012. Id.  Because he filed the Motion to Vacate in August 2012, Burks contends that the motion was filed within one year of discovering the facts supporting his claim, consistent with § 2255(f)(4).  Alternatively, Burks contends that he is entitled to equitable tolling of the statute of limitations.  Id.

**III.     Discussion**

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence.  Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack.  28 U.S.C §2255(a) (2008).  Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack.  United States v. Addonizio, 442 U.S. 178, 184-86 (1979). A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack.  United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

Following the Anti-Terrorism and Effective Death Penalty Act (AEDPA) of 1996, 28 U.S.C. § 2255 imposes a one-year statute of limitations that runs from the latest of one of four dates:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme

Court, if that right has been newly recognized by the Supreme Court and made

retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have

been discovered through the exercise of due diligence.

28 U.S.C. §§ 2255(f)(1-4).  Burks admits that his Motion to Vacate is not timely under 28

U.S.C. §§ 2255(f)(1-3).  Motion to Vacate at 15.  Therefore, his Motion to Vacate is timely

only if it satisfies the requirements of § 2255(f)(4) or equitable tolling.[4]

### A.  Ground One: Burks' involuntary-guilty-plea claim is time-barred

There is little question that Burks' involuntary-guilty-plea claim is time-barred.  The

factual basis of the involuntary-guilty-plea claim is that counsel allegedly assured Burks

that he had worked out a deal with the government (off the record) whereby Burks would

only receive five years in prison if he pled guilty, that this promise induced Burks to plead

guilty, and then the Court sentenced him to 15 years in prison instead.  See Motion to

Vacate at 5-7.  This has led Burks to conclude that counsel duped him into pleading guilty

with a false guarantee of a light sentence.

Burks attended the sentencing hearing at which the Court announced his 15 year

term of imprisonment, yet Burks expressed no surprise.  See Sentencing Tr. at 75-82.

---

[4]     Burks does not claim that he is actually innocent, so the Court need not address whether the miscarriage of justice exception allows Burks to circumvent the statute of limitations.  Other than the equitable tolling argument related to his attorney's alleged failure to appeal, Burks makes no other contention that the late filing is excused.  Thus, the Court focuses on whether Burks meets the requirements for § 2255(f)(4) and equitable tolling.

Notably, the factual predicate for Burks' involuntary-guilty-plea claim was plainly revealed to Burks the instant the Court sentenced him inconsistently with counsel's alleged promise.  The factual basis did not suddenly become discoverable only at some point after his conviction and sentence became final.  Indeed, Burks does not even attempt to explain how the involuntary-guilty-plea claim satisfies the requirements for either § 2255(f)(4) or equitable tolling.  Accordingly, neither § 2255(f)(4)'s alternative trigger date nor equitable tolling of § 2255(f)(4) can save Burks' tardy involuntary-guilty-plea claim. Thomas v. United States, 2014 WL 4715861 at *4 (N.D. Ala. Sept. 22, 2014) ("Thus, § 2255(f)(4) does not apply to claims based on 'vital facts' that occurred in or prior to the trial court proceedings of which the defendant was or should have been aware in the exercise of due diligence prior to the time that his conviction became final."); Abdullah v. United States, 2012 WL 4475730 at *2 (M.D. Ala. July 20, 2012) (statute of limitations under § 2255(f)(4) not applicable where "all of the facts underlying [the petitioner's] claim were known – or could have been known – at sentencing."); see also United States v. James, 323 F. App'x 746, 750 n.1 (11th Cir. 2009) (federal prisoner's challenge to the evidence of his guilt and the court's calculation of his sentence was governed by § 2255(f)(1) and not § 2255(f)(4)).

Because Burks was aware of the factual predicate for this claim as soon as the Court sentenced him to 15 years rather than the five years counsel allegedly promised,

and he failed to file a motion to vacate based on those facts within one year of the date

his conviction and sentence became final, the claim is untimely under § 2255(f)(1).[5]

### B. Ground Two: Burks' failure-to-appeal claim is time-barred as well

The Court next turns its attention to Burks' contention that his failure-to-appeal

claim is timely under § 2255(f)(4) or based on equitable tolling.  As noted earlier, a claim

is timely under § 2255(f)(4) if it is filed within one year of the date on which the facts

supporting the claim presented could have been discovered through the exercise of due

diligence.  28 U.S.C. § 2255(f)(4); Aron, 291 F.3d at 710-11.  "Due diligence" in this

context "does not require the maximum feasible diligence, but only 'due,' or reasonable

diligence."  Aron, 291 F.3d at 712 (citing Wims v. United States, 225 F.3d 186, 190 n.4

(2d Cir. 2000)).  "[T]he due diligence inquiry is an individualized one that 'must take into

account the conditions of confinement and the reality of the prison system.'"  Aron, 291

F.3d at 712 (quoting Montenegro v. United States, 248 F.3d 585, 592 (7th Cir. 2001)).

The one-year clock under § 2255(f)(4) begins to run as soon as the supporting

facts "could have been discovered through the exercise of due diligence, not when they

---

[5]      In the interest of completeness, the Court observes that Burks' claim that he involuntarily pled guilty based on counsel's alleged guarantee of a five-year sentence would also fail on the merits.  When he pled guilty, Burks told the Court, under oath, that he understood he could receive the maximum potential sentence of 20 years.  Burks further told the Court that he did not plead guilty based on any promises, assurances, or agreements that were not stated in the Plea Agreement or on the record.  Burks specifically told the Court that nobody had assured him he would receive a light sentence.  Plea Tr. at 28-29.  "Solemn declarations in open court carry a strong presumption of verity."  Blackledge v. Allison, 431 U.S. 63, 74 (1977).  Such representations "constitute a formidable barrier in any subsequent collateral proceedings." Id.  Burks has provided no convincing reason why the Court should disregard his sworn affirmations at the plea colloquy.  Because Burks has provided no convincing reason for the Court to disregard those affirmations, the Court would find that Burks' earlier representations refute the claim that he pled guilty in reliance on the belief that he would receive a 5-year sentence.

are <u>actually</u> discovered." <u>Aron</u>, 291 F.3d at 711 (emphasis in original).  The fact that a prisoner is not constantly exercising due diligence, however, does not foreclose application of § 2255(f)(4) so long as he files a motion within a year of when the supporting fact(s) became discoverable through due diligence.  <u>See</u> <u>id.</u>  Thus, for example, if a prisoner who has not been exercising due diligence uncovers a fact that could have been uncovered two months earlier with reasonable effort, a motion to vacate based on the newfound fact will still be timely if the prisoner files within ten months of when he actually discovered it.  That is so because the motion would still be filed within a year of when the supporting fact <u>could</u> have been discovered with due diligence.  <u>See</u> <u>id.</u>

As Burks filed his Motion to Vacate 21 months after his conviction and sentence became final, the Court counts back one year to determine whether Burks could not have discovered (through reasonable effort) the factual predicate of his ineffective-assistance-for-failure-to-appeal claim before that point.  Put another way, the Court examines whether Burks could not reasonably have discovered the fact that his attorney did not file an appeal until at least nine months after his conviction and sentence became final (12 months back from 21 months).  If Burks can make that showing, then his claim is timely.  If not, his claim is untimely.

Several factors are relevant in determining when a prisoner could discover through the exercise of due diligence that trial counsel did not file a requested notice of appeal.  One consideration is whether the fact of an appeal was public information discoverable through public resources.  <u>Thomas</u>, 2014 WL 4715861 at *7 ("Whether a notice of appeal

was subsequently filed was a matter of public record, so Thomas could have verified anytime after [the deadline for filing a notice of appeal] that no appeal had been filed simply by contacting the clerk of either this court or the United States Court of Appeals for the Eleventh Circuit."); Anjulo-Lopez v. United States, 541 F.3d 814, 819 (8th Cir. 2008) ("That an appeal had not been filed was a matter of public record.  And we think it clear from the face of the motion and record here that a duly diligent person in Anjulo-Lopez's circumstances could have unearthed that information anytime after the deadline for filing the appeal passed"); Owens v. Boyd, 235 F.3d 356, 360 (7th Cir. 2000) (the fact that an appeal had not been filed is a "matter of public record, 'which reasonable diligence could have unearthed.'"); see also Wade v. Robinson, 327 F.3d 328, 333 (4th Cir. 2003) (limitation period under 28 U.S.C. § 2244(d)(1)(D) triggered on the date the litigant could have discovered the factual predicate of his claim "through public resources.").  Where, as in the Eleventh Circuit, the filing of a notice of appeal (or lack thereof) is public information, the fact that an attorney has failed to file one is a fact that becomes discoverable through the exercise of due diligence once the time for filing a notice of appeal has expired.  Thomas, 2014 WL 4715861 at *7.  By the simple expedient of contacting the clerk of court for either the district court or court of appeals, one could easily inquire about the status of a notice of appeal.  While it is entirely appropriate to allow a petitioner some additional time to account for the conditions of confinement and to allow the petitioner or a third party (such as a family member) to correspond with the

clerk of the court, the absence of a notice of appeal at least becomes discoverable through due diligence once the time for filing a notice of appeal has expired. Id.

A second factor, albeit related to the first, is whether the Court informed the petitioner of the timeframe for filing a notice of appeal. See Ryan v. United States, 657 F.3d 604, 608-09 (7th Cir. 2011) (although there is no "magic number," it could take two months for a diligent inmate to discover that no notice of appeal was filed in his case where neither counsel nor the district court informed him of the deadline for filing a notice of appeal). If a court did not inform the petitioner that he had 14 days to file a notice of appeal, the petitioner might think he (or rather, his attorney) had more time, and thus would not know when to check the docket to confirm or deny the existence of a notice of appeal. Accordingly, it may be appropriate under that circumstance to give the petitioner additional time before a reasonably prudent individual would know to check the docket to verify that a notice had or had not been filed.

A third and significant factor is whether counsel affirmatively misled the petitioner into believing that an appeal had been filed, whether counsel affirmatively told the petitioner that he would not appeal, or whether counsel's response fell somewhere in between. In unpublished decisions, the Eleventh Circuit has opined that if counsel affirmatively misled the petitioner into believing that an appeal would be filed, then the petitioner is entitled to rely on his attorney's assurances and is not expected to verify that a notice of appeal had been filed at the end of the 14-day period following sentencing. See e.g., Aragon-Llanos v. United States, 556 F. App'x 826, 828 (11th Cir. 2014)

(petitioner entitled to evidentiary hearing on whether he exercised due diligence in discovering that his attorney failed to file a requested appeal where counsel allegedly "deceived [the petitioner] into believing the appeal was moving ahead."); Kicklighter v. United States, 281 F. App'x 926, 931 (11th Cir. 2008) (following denial of § 2255 relief, remanding for further factual findings regarding timeliness under § 2255(f)(4) where the petitioner alleged that counsel deceived him into believing an appeal was filed).   In such a case, a court may have to undertake a fact-sensitive inquiry into when a reasonable petitioner would have begun to realize that an appeal might not have been filed despite counsel's promise to do so.   On the other hand, if counsel informed the petitioner that he would not appeal, then the petitioner would know that counsel would not be filing the requested appeal on the same date that his attorney so informed him.   See e.g., Badillo v. United States, 2013 WL 2297172 at *3 (M.D. Ala. May 24, 2013) (for purposes of § 2255(f)(4), petitioner should have been aware shortly after sentencing that his attorney would not be filing a requested appeal as soon as counsel advised him to withdraw the appeal); Thomas, 2014 WL 4715861 at *7 (for purposes of § 2255(f)(4), petitioner should have been aware that counsel was not filing the requested appeal when, in response to petitioner's question about the possibility of pursuing one, counsel stated "What appeal?").   And if counsel's response was somewhere in between an affirmative assurance and an affirmative refusal, then a prudent petitioner in most cases should verify with the clerk of the court whether a notice had been filed upon the expiration of the 14-day period following sentencing, assuming such information is publicly accessible and

13

that the district court has informed the petitioner of the timeframe for filing a notice of appeal.  See Anjulo-Lopez, 541 F.3d at 815, 819 (petitioner who subjectively believed that an appeal had been filed based on conversations with his attorney should have promptly checked court records to verify whether a notice of appeal had been filed).  Such "in-between" cases may also require an inquiry into the nature and content of communications between the petitioner and counsel, and what impressions these communications would have had on a reasonable person in the petitioner's shoes.

Based on the foregoing factors and the circumstances of this case, § 2255(f)(4) does not make Burks' failure-to-appeal claim timely – 21 months after his conviction and sentence became final.  Burks either knew or should have known well over a year before he filed the instant Motion to Vacate that counsel had not filed a notice of appeal.

First, the presence or absence of a notice of appeal on the docket was public information that Burks could easily have accessed for a full year after the expiration of the 14-day period for filing a notice of appeal.  Thomas, 2014 WL 4715861 at *7; Owens, 235 F.3d at 360.   Thus, the fact that counsel never filed an appeal became discoverable through the exercise of reasonable diligence on or shortly after November 8, 2010, 14 days after the Court sentenced Burks, and remained readily accessible.  All Burks had to do was contact, or have his sister contact, the clerk's office for the district court or the court of appeals.  Indeed, Burks either already knew or could have known to do this earlier, because this is the very method by which he ultimately learned of the absence of an appeal (albeit not until after February 2012).  It would have required no extraordinary

14

diligence to place a phone call or dispatch a letter to the clerk of either court to inquire about a notice of appeal.  See Williams v. United States, No. 08-60237-CR, 2011 WL 1878124, at *2 (S.D. Fla. Apr. 25, 2011) report and recommendation adopted, No. 10-22897-CIV, 2011 WL 1878126 (S.D. Fla. May 17, 2011) ("With one letter or telephone call to the Clerk of this Court or to the presiding district judge, movant could have secured a copy of the docket sheet in this case and immediately known that a notice of appeal had not been filed. The Court, therefore, concludes that Defendant's failure to make any attempt to contact the Court evinces a lack of due diligence.").  Such a feat could have been accomplished with reasonable effort or less.

Notably, the Court specifically informed Burks at sentencing that he had 14 days to file a notice of appeal.  (Sentencing Tr. at 81).  The Court instructed Burks:

> THE COURT:         *** I do have to advise you of your appeal rights, sir.  I know that your appeal rights are somewhat limited by the waiver of appeal in your plea agreement.  That's for you and your attorney to discuss.  But I'm just going to advise you of your right to appeal generally, and that is, that you have the right to appeal the Court's sentence, and if you wish to appeal, you have to file a notice of appeal within 15 days – pardon me, 14 days.  It's 14, not 15.  And if you don't file that notice of appeal within 14 days, then your right to appeal is entirely waived.
>                                   ***
>                   Do you understand those things, sir?
>
> DEFENDANT BURKS:       Yes, ma'am.
>
> THE COURT:         Do you have any questions?
>
> DEFENDANT BURKS:       No, ma'am.

Sentencing Tr. at 81-82.  Thus, if Burks was in fact expecting a notice of appeal, he knew that he or his attorney had to file a notice of appeal no later than 14 days after the sentencing hearing.  Yet rather than have himself or his sister check the court's docket 14 days after sentencing, Burks waited more than 14 <u>months</u> before having his sister contact the court about the status of an appeal.  Such a delay evinces a lack of due diligence.

Significant as well is the fact that Burks is inconsistent about whether his attorney affirmatively assured him that he would file an appeal or whether his attorney affirmatively told him that he would <u>not</u> file an appeal.  In the Motion to Vacate, Burks states that he "told his attorney that he wanted to appeal his sentence.  His attorney told him he would." Motion to Vacate at 9.[6]  Thus, Burks initially suggests that his attorney affirmatively led him to believe that there would be an appeal.  However, in an affidavit that Burks himself attached to his Motion to Vacate, Burks' sister stated the following:

> As we were leaving court hearing the length of his sentence Mr. Glober [Burks' trial counsel] mentioned that Cris would have to serve 85% of his time, <u>there was no appeal as he had entered into a plea agreement which left no room for appeal</u>.  We discussed a potential release date of 2023.

(Doc. 1-1, Affidavit at 4) (emphasis added).  Then, Burks states in his Response to the government's Motion to Dismiss:

---

[6]    Notably, Burks states that his Motion to Vacate was prepared with the assistance of a "jailhouse lawyer."  Motion to Vacate at 17.  Although "jailhouse lawyers" often serve a useful purpose by helping fellow inmates navigate the legal system, and can facilitate a court's review by clarifying the legal issues, it is also the Court's experience that filings prepared by fellow inmates may contain form-allegations meant to satisfy the legal elements of an argument, but which may be based on information that is assumed rather than actually true in a given petitioner's case.

> Mr. Glober never advised the defendant (Burks) of his appellate rights until after the judge notified the defendant of his right to appeal. [T]he content of exchange in this case does not constitute adequate consulation [sic]. Simply asserting the view that an appeal would not be sucessful [sic] does not constitute a consultation in any meaningful sense.

Response at 4 (emphasis added).[7]  Thus, unlike in the Motion to Vacate, Burks himself does not contend that counsel assured him there would be an appeal.  Rather, Burks suggests something quite different: that his attorney advised him that an appeal would be futile.  Indeed, the latter account is consistent with that of Burks' sister (which Burks filed with the Court), who said that counsel told her right after sentencing that there would be no appeal because Burks' plea agreement foreclosed the possibility.  Compare Motion to Vacate at 9 with Affidavit at 4, Response at 4.  The Court concludes, based on what Burks states in his Response, and as corroborated by his sister's affidavit (which Burks attached to his Motion to Vacate), that counsel either affirmatively told Burks there would be no appeal, or at the very least told Burks that an appeal would be unsuccessful.  Either way, counsel's statements should have put Burks on notice that he could not rely on counsel to file a notice of appeal, and therefore he would need to promptly verify whether or not counsel filed one.  Comparing the attorneys' statements in Thomas, 2014 WL 4715861 at *7 ("What appeal?"), and Badillo, 2013 WL 2297172 at *3 (advising defendant to withdraw appeal), that were deemed to put the defendants on notice that their attorneys

---

[7]     This statement seems to slightly alter the nature of Burks' ineffective assistance claim from one alleging that counsel failed to file a requested appeal to one alleging that counsel failed to consult as required under Flores-Ortega, 528 U.S. at 477-81.  It does not, however, alter the timeliness analysis under § 2255(f)(4) at issue here.  If anything, were Burks to assert a failure-to-consult claim it would be even more obviously untimely under § 2255(f)(4), because Burks would have been aware of the factual predicate for the failure-to-consult claim from the time the allegedly deficient consultation occurred.

would not be filing a requested appeal, counsel's statement to Burks that an appeal would be unsuccessful – without more – should have been at least enough to put Burks on notice as well.   Yet Burks waited eight months to make any inquiry of his attorney regarding an appeal, and waited another six months to make contact with a clerk of court regarding the filing of a notice of appeal.

Whether Burks actually instructed counsel to file an appeal, and whether counsel gave ineffective assistance by failing to do so, is not the question at this juncture.   The timeliness of Burks' claim under § 2255(f)(4) is the threshold issue, and that issue turns on when Burks knew or should have known that his attorney did not file the requested appeal.   The Court concludes that Burks could and should have known that his attorney did not file the requested appeal well over a year before he filed his Motion to Vacate. The presence or absence of a notice of appeal was a public record that became easily discoverable to Burks on November 8, 2010.   Assuming (generously) that Burks or a family member would have needed additional time to correspond with the clerk of court to ascertain whether counsel had filed a notice of appeal, certainly the nine month period running from November 8, 2010 to August 7, 2011 was a sufficient period to one acting with reasonable diligence to do so.   Yet Burks waited until February 2012,  and did not file the Motion to Vacate until August 7, 2012, some nine months after the one year filing period under § 2255(f)(1) expired.[8]  For all of the foregoing reasons – (1) the fact that the

---

[8]      For that matter, Burks' Motion to Vacate would be untimely under § 2255(f)(4) even if the Court recognized that it would take as long as any period of time under nine months to discover that counsel had not filed an appeal.

Court specifically notified Burks at sentencing that he had 14 days to file a notice of appeal, (2) the fact that the presence or absence of a notice of appeal on the docket was public information readily discoverable with reasonable effort on or shortly after the expiration of those 14 days, and throughout the full one year period for filing a motion to vacate, (3) the fact that Burks' attorney either affirmatively told him that he would <u>not</u> appeal or that an appeal would be in vain, and (4) the fact that Burks still failed to file his Motion to Vacate until 21 months after his conviction and sentence became final – the Court concludes that Burks' delay is inconsistent with the due diligence required by § 2255(f)(4).   Therefore, the Court concludes that Burks has failed to file his Motion to Vacate within one year of the date on which due diligence would have uncovered the facts supporting his failure-to-appeal claim.

The Court further finds that Burks has failed to satisfy the requirements for equitable tolling of the statute of limitations.[9]   A statute of limitations may be equitably tolled only when a petitioner shows (1) that he pursued his rights diligently, and (2) "that some extraordinary circumstance" prevented a timely filing.  <u>Perez v. Florida</u>, 519 F. App'x 995, 996-97 (11th Cir. 2013) (citing <u>Holland v. Florida</u>, 130 S. Ct. 2549, 2562 (2010)).  A failure to establish either prong is fatal to the equitable tolling argument.  <u>Perez</u>, 519 F. App'x at 997 (citing <u>Diaz v. Sec'y for Dep't of Corrs.</u>, 362 F.3d 698, 702 & n.7 (11th Cir.

---

[9]      "Recharacterizing [the petitioner's] argument as a request for 'equitable tolling' adds nothing; [§ 2255(f)(4)] is itself a kind of tolling rule, and it would be inappropriate for the judiciary to add time on a theory that would amount to little more than disagreement with the way Congress wrote [§ 2255(f)]." <u>Owens</u>, 235 F.3d at 360.  Nevertheless, the Court will examine whether Burks' equitable tolling argument has any merit.

2004)).  "Equitable tolling is an extraordinary remedy that is limited to rare and exceptional circumstances."  Perez, 519 F. App'x at 997.  Burks has not shown that this is one of those rare and exceptional cases.  Burks' eight-month delay before doing anything to learn about the status of his appeal does not reflect diligent pursuit of his rights, nor does his 14-month delay in contacting the Eleventh Circuit Court of Appeals to inquire of the status of his case.  Just as important, Burks has not pointed to any extraordinary circumstance that prevented him from timely discovering the factual predicate of his claim and subsequently filing his Motion to Vacate on time.  As previously discussed, the fact that Burks' attorney did not file a notice of appeal in his case was public information that could have been discovered on November 8, 2010 or any time thereafter.  Burks has not identified any impediment that prevented him from discovering the same information.  Consequently, Burks has not shown that he is entitled to equitable tolling.

**IV.    Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)**

If Burks seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253 (c)(2). To make this substantial showing, Burks "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v.

20

<u>Cockrell</u>, 537 U.S. 322, 335–36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby

**ORDERED:**

1.  The United States' Motion to Dismiss (Doc. 6) is **GRANTED**.

2.  Petitioner Cristopher O'Neal Burks' Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255 (Doc. 1, Motion to Vacate) is **DISMISSED WITH PREJUDICE**.

3.  The Clerk shall enter judgment in favor of the United States and against Cristopher O'Neal Burks, and close the file.

4.  If Burks appeals the denial of the petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not

warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

 **DONE AND ORDERED** at Jacksonville, Florida, this 15th day of January, 2015.


MARCIA MORALES HOWARD
United States District Judge

Lc19
Copies:
Counsel of Record
Pro se party

22